# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER YNOSENCIO YSAIS,

      Plaintiff,

v.                                      NO. Civ. 08-0449 JB/DJS

STATE OF NEW MEXICO, JUDICIAL STANDARD COMMISSION,
as an Employee of the State of New Mexico, and as an individual,
JAMES A. NOEL, in his official capacity as Executive Director of
Judicial Standard Commission, and Employee of the State of New Mexico,
and as an individual, DAVID S. SMOAK, in his official capacity as Chairman
of the Judicial Standard Commission, and Employee of the State of New Mexico,
and as an individual, RANDALL D. ROYBAL, in his official capacity as Deputy
Director/ Chief of Staff Attorney of the Judicial Standard Commission, and Employee
of the State of New Mexico, BILL RICHARDSON, in his official capacity as Governor,
and Employee of State of New Mexico, and as an individual, THE DISCIPLINARY
BOARD, as an Employee of the State of New Mexico, and as an individual,
VIRGINIA L. FERRARA, as Chief Disciplinary Counsel of the Disciplinary Board,
and Employee of the State of New Mexico, and as an individual, SECOND JUDICIAL
DISTRICT COURT, and as an individual, DEBORAH DAVIS WALKER, in her
official capacity as an Employee of the Second Judicial District Court, and Employee
of State of New Mexico, and as an individual, WILLIAM F. LANG, in his official
capacity as an Employee of the Second Judicial District Court, and Employee of
State of New Mexico, and as an individual, THIRTEENTH JUDICIAL DISTRICT
COURT, and as an individual, NANCY COLELLA, in her official capacity as an
Employee of Thirteenth Judicial District Court, and Employee of the State of New
Mexico, and as an individual, STATE OF NEW MEXICO COURT OF APPEALS,
and as an individual, A. JOSEPH ALARID, in his official capacity as an Employee
of the Court of Appeals, and Employee of State of New Mexico, and as an individual,
CYNTHIA A. FRY, in her official capacity as an Employee of the Court of Appeals,
and Employee of State of New Mexico, and as an individual, CELIA FOY
CASTILLO, in her official capacity as an Employee of the Court of Appeals, and
Employee of State of New Mexico, and as an individual,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on: (i) the Judicial Standard Commission's, James

A. Noel's, David S. Smoak's, Randall D. Roybal's, the Disciplinary Board's, Virginia L. Ferrara's,

the Second Judicial District Court's, Judge Deborah Davis Walker's, Judge William F. Lang's, the Thirteenth Judicial District Court's, Nancy Colella's, the New Mexico Court of Appeals', Judge A. Joseph Alarid's, Judge Cynthia A. Fry's, and Judge Celia Foy Castillo's Motion to Dismiss, or in the Alternative, for Summary Judgment, filed December 31, 2008 (Doc. 167)("Motion to Dismiss") on the basis of absence of subject-matter jurisdiction because of Eleventh-Amendment immunity and for failure to state a claim on which relief may be granted; (ii) on Plaintiff Christopher Ynosencio Ysais' Motion to Strike, Sanction, and Disbarment for Document 167, filed January 5, 2009 (Doc. 174); and (iii) on Bill Richardson's Motion to Dismiss or for Summary Judgment, filed December 2, 2008 (Doc. 152), for failure to timely serve the complaint. The principal issues are: (i) whether the the Judicial Standard Commission, James A. Noel, David S. Smoak, Randall D. Roybal, the Disciplinary Board, Virginia L. Ferrara, the Second Judicial District Court, Judge Deborah Davis Walker, Judge William F. Lang, the Thirteenth Judicial District Court, Nancy Colella, the New Mexico Court of Appeals, Judge A. Joseph Alarid, Judge Cynthia A. Fry, and Judge Celia Foy Castillo ("the State Defendants") are immune from suit pursuant to the Eleventh Amendment of the United States Constitution and/or pursuant to the doctrines of absolute judicial immunity, quasi-judicial immunity, and/or prosecutorial immunity; (ii) whether the Court should strike the Defendants' motion to dismiss; and (iii) whether Plaintiff Christopher Ysais properly and timely served Bill Richardson. Because there is no good reason to strike the motion to dismiss and the State Defendants have established their right to Eleventh-Amendment, absolute, quasi-judicial, and/or prosecutorial immunity from suit such that Ysais has failed to state a cognizable claim against any State Defendant, the Court will deny the motion to strike and dismiss this Complaint against the State Defendants. Further, because Ysais has not properly served Richardson, the Court will dismiss Ysais' Complaint against him.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      **Other Cases.**

This case is the third time that Ysais has attempted to assert the Court's subject-matter and personal jurisdiction over individuals and entities directly or even tangentially involved with divorce, child-custody, and state criminal proceedings for alleged child abuse involving Ysais, his former wife, and their son in the New Mexico state courts.  In Ysais v. Richardson, No. Civ.  07-0287 JB/RLP, Ysais sued over forty state and private entities and individuals, including Richardson and the Second Judicial District Court, for alleged violation of Ysais' civil rights under 42 U.S.C. §§ 1983 and 1985; for negligence, negligent supervision, negligent training, outrageous conduct, malicious prosecution, defamation, libel, slander, publication of facts placing Ysais in a false light; and for wrongful institution of legal proceedings.  See Ysais v. Richardson, No. Civ. 07-0287 JB/RLP, Memorandum Opinion and Order at 3, filed July 9, 2008 (Doc. 356).  The Court dismissed Ysais' claims against Richardson; the Children, Youth and Family Division of the State of New Mexico; the Second Judicial District Court; the Second Judicial District Court Family Clinic Division; the University of New Mexico Hospital; the Thirteenth Judicial District Attorney's Office; and several individual state employees acting in their official capacities because those entities and their employees were "immune from suit and, therefore, Plaintiff Christopher Ysais cannot state a plausible claim for relief against them."  Id. at 2.  The Court dismissed claims against other individuals on the basis of quasi-judicial immunity.  See Ysais v. Richardson, No. Civ. 07-0287 JB/RLP, Memorandum Opinion and Order at 2, filed August 7, 2008 (Doc. 395).  Eventually, the Court dismissed all claims against all Defendants.  See Ysais v. Richardson, No. Civ. 07-0287 JB/RLP, 2008 WL 2230720, *3 (D.N.M. March 24, 2008)(dismissing Ysais' claims brought under 42 U.S.C. § 1985 for failure to state a claim because Ysais failed to allege a "class-based or racial

discriminatory animus," and dismissing his claims for conspiracy against three defendants because his complaint "presents no facts showing an agreement and concerted action among [the Defendants]");  Ysais v. Richardson, No. Civ. 07-0287 JB/RLP, Memorandum Opinion and Order at 3, filed March 27, 2009 (Doc. 647)(dismissing complaint against Ysais' former wife).

On May 5, 2008, the same day Ysais filed the Complaint in this case, he improperly attempted to "remove his divorce proceeding from state court to federal court on the grounds that he is not receiving a fair hearing in state court."  Ysais v. Ysais, No. Civ. 08-0448 MV/RHS, Memorandum Opinion and Order at 1, filed August 28, 2008 (Doc. 13).  The Court *sua sponte* remanded the divorce proceedings to state court because it does not have original subject-matter jurisdiction over suits involving domestic relations.  See id. at 2-3.

Although Ysais has filed forty-nine motions that were still pending at the time the State Defendants filed their motion to dismiss, and the State Defendants filed six motions before filing their motion to dismiss that also are still pending, because the State Defendants have raised in their motion to dismiss the issue of the Court's subject-matter jurisdiction over certain claims and have also raised issues of absolute immunity from suit, the Court must resolve these issues before making substantive rulings on the previously filed motions.  See Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008)(noting "the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation"); Harris v. Owens, 264 F.3d 1282, 1288 (10th Cir. 2001)(holding that, "[o]nce effectively raised, the Eleventh Amendment becomes a limitation on [federal-court] subject-matter jurisdiction, and we may not then assume 'hypothetical jurisdiction' to reject a plaintiff's claim on the merits"); Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992)(noting that, because "qualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation, . . . [d]iscovery should not be allowed until

-4-

the court resolves the threshold question" regarding qualified immunity). Cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425, 431 (2007)(holding that "a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case" because "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits"); United States ex rel. Burlbaw v. Orenduff, 548 F.3d 931, 944 (10th Cir. 2008)(discussing when an appellate court may by-pass the issue of Eleventh-Amendment immunity and reach the merits because the defendant failed to effectively raise the issue either before the district court or on appeal).

### 2.    Allegations in the Second Amended Complaint.

All of the Defendants in this case either are state agencies or entities and their employees, or judges who have made rulings in Ysais' divorce or child custody proceedings.  Noel is the Executive Director of the Judicial Standards Commission; Smoak is the Chairman of the Judicial Standards Commission; Roybal is the Deputy Director of the Judicial Standards Disciplinary Board; Richardson is the Governor of New Mexico; Ferrara is the Chief Counsel of the New Mexico Disciplinary Board; Judge Walker was the judge in the Second Judicial District Court who presided over many of Ysais' divorce and custody proceedings before they were transferred to the Thirteenth Judicial District Court; Judge Lang was Chief Judge in the Second Judicial District Court; Colella was a hearing officer for the Thirteenth Judicial District Court who made recommendations in the divorce and child-custody proceedings; and Judge Alarid, Judge Fry, and Judge Castillo are judges for the New Mexico Court of Appeals who made rulings in appeals involving Ysais.  See Second Amended Complaint ¶¶ 17-26, at 4-5; ¶ 36, at 6; ¶¶ 38-39, at 7; ¶ 41, at 7; ¶¶ 43-47, at 8; ¶ 49, at 9; ¶ 64, at 12; Motion to Dismiss at 1-2.

Ysais made the following allegations in his Second Amended Complaint against the individual State Defendants in regard to his claims brought under 42 U.S.C. § 1983:

After Ysais sued the Second Judicial District Court as a named Defendant in his first federal case filed in May 2007, Judge Walker "stated on the record and in open court on [sic] that the first federal case was invalid and proceeded with the hearing and thus openly retaliated against Mr. Ysias," Second Amended Complaint ¶ 17, at 4; she allegedly "openly threatened Mr. Ysais in open court" in some unspecified way, id. ¶ 18, and she allegedly "made the presumption of guilt by stating on the record and in open court. 'Just because the State could not prove their case doesn't mean that you did not commit the acts,'" id. ¶ 20. "Despite the fact the case was on appeal the Second Judicial District Court and Judge Deborah Davis Walker reopened the case and set custody hearing and ordered a TRO." Id. ¶ 21. See id ¶ 47, at 8. Ysais contends that the individuals associated with the Second Judicial District Court – presumably Judge Walker – also violated his due process rights "by refusing to remove themselves from the custody case," id. ¶ 45, at 8, and "by remaining on the case and ignoring changes of venue, the right to recuse and notice of preemptory election," id. ¶ 46.

Ysais makes a conclusory statement "that all individual defendants, Bill Richardson, James A. Noel, David S. Smoak, Randall D. Roybal, Virginia L. Ferrara, Deborah Davis Walker, William F. Lang, Nancy Colella, A. Joseph Alarid, Cynthia A. Fry, Celia Foy Castillo, all violated his civil rights by interfering with due process of law" in some unspecified way. Id. ¶ 34, at 6. He alleges that the individual members of the Judicial Standard Commission

> [v]iolated due process of law by willfully and maliciously ignoring a total of seven complaints sent to their commission. Each return letter was almost an identical auto generated letter. Their basis for not doing an investigation was that these issue [sic] were appellant [sic] in nature and that there was not enough evidence presented.

Id. ¶ 36.

Ysais alleges that the individual judges on the New Mexico Court of Appeals "[v]iolated due process of law by willfully and maliciously preventing the appeal case from moving beyond the docketing statement.  They refused to allow a brief, thus they violated due process of law not allowing any evidence to be presented." Id. ¶ 38, at 7.  He also alleges that they violated due process "because they refused to send this case to the next level."  Id. ¶ 39.

Ysais alleges that the individual members of the Disciplinary Board "[v]iolated due process of law by not even consider [sic] doing any investigation into the allegation of [attorney] misconduct. Instead the disciplinary board wrote a letter stating that district attorneys office does not prosecute a cause without probable cause and that the district attorneys office was justified to proceed with the case."  Id. ¶ 41.

The Second Amended Complaint does not specify what actions Governor Richardson took and does not allege that Richardson had any personal involvement in his divorce, child-custody, or criminal proceedings; but it alleges that "Richardson violated due process of law by inter fearing [sic] with on going cases and official complaints made to New Mexico Attorney General Office, Psychological Board, Social Worker Board, Clinical Board, Judicial Standard Commission, and Court of Appeals."  Id. ¶ 43, at 8.

Ysais alleges that Colella, the hearing officer with the Thirteenth Judicial District Court in his child custody matter, "[v]iolated due process of law by ignoring a preemptory notice of removal an [sic] then proceeding with a illegal hearing," id. ¶ 49, at 9, after he improperly attempted to remove his divorce/custody proceedings to federal court.

In regard to his claims for conspiracy brought under 42 U.S.C. §§ 1985 and 1986, Ysais alleges, again in a conclusory manner, that

all individual defendants, Bill Richardson, James A. Noel, David S. Smoak, Randall

D. Roybal, Virginia L. Ferrara, Deborah Davis Walker, William F. Lang, Nancy Colella, A. Joseph Alarid, Cynthia A. Fry, Celia Foy Castillo, all individual defendants conspired to violate Mr. Ysais civil rights by interfering with due process of law and violated the *redress of grievance under the First Amendment of the United States Constitution.*

Id. ¶ 57, at 10 (italics in original).  He alleges that the Judges of the Court of Appeals

[c]onspired to violated [sic] due process of law by willfully and maliciously *preventing the petition of the Government for a redress of grievance under the First Amendment of the United States Constitution.* By refusing to allow the appeal case from moving beyond the docketing statement. And refused to allow a brief.

Id. ¶ 58, at 10-11 (italics in original).  He alleges that Colella "conspired to deny Mr. Ysais of his civil rights" by proceeding with a hearing after he "presented her with a copy" of his notice of removal and stating "that it did not pertain to her."  Id.  ¶ 64, at 12.  He alleges that "Richardson conspired to violate Mr. Ysais civil rights in every aspect of the any [sic] complaint or in any court case in the State of New Mexico."  Id. ¶ 66, at 13.

In regard to a claim in Count III brought pursuant to 42 U.S.C. § 1982, Ysais alleges, in a conclusory fashion, that "all individual defendants, Bill Richardson, James A. Noel, David S. Smoak, Randall D. Roybal, Virginia L. Ferrara, Deborah Davis Walker, William F. Lang, Nancy Colella, A. Joseph Alarid, Cynthia A. Fry, Celia Foy Castillo, all violated his civil rights by interfering with due process of law."  Id. ¶ 73, at 14.

Regarding a state-law claim for "corruption" in Count IV, Ysais' Complaint alleges that

Bill Richardson is in a very unique position as governor.  But he has a duty to follow and live by his oath of office to up hold and defend the Constitution against all enemies foreign and domestic.  By not doing this he has violated New Mexico law 30-23-2 Paying or receiving public money for services not rendered.

Second Amended Complaint ¶ 77, at 15.  Similarly, Ysais alleges that Judge Walker also violated § 30-23-2 by failing in her "duty to follow and live by her oath of office to up hold and defend the Constitution against all enemies foreign and domestic," id. ¶ 78; by refusing to recuse herself after

Ysais had named the Second Judicial District Court as a defendant in his first federal case, see id. ¶ 79; by refusing "to remove herself from the case despite the fact she was personal [sic] embroiled in the case," id. ¶ 80; "by not following the Code of Judicial Conduct," id. ¶ 81, and "by reopening the civil case despite the fact the case was currently under the jurisdiction of the court of appeals," id. ¶ 82, at 16.  He alleges that Colella violated § 30-23-2 by conducting "an illegal hearing."  Id. ¶ 83.  Ysais alleges that the individual members of the Judicial Standards Commission violated § 30-23-2 by "receiv[ing] public money for services not rendered" to him when they refused to investigate the judges. Id. ¶ 84.

## MOTIONS TO STRIKE IN CIVIL CASES

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  By its express language, however, rule 12(f) applies only to material contained in a "pleading."  The Federal Rules of Civil Procedure define "pleadings" as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, "if the court orders one, a reply to an answer." FED. R. CIV. P. 7(a)(1-7).  Generally, therefore, motions, briefs, and memoranda may not be attacked by a motion to strike.  See Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490, *1, *4 (10th Cir. March 2, 1992)(affirming, "for substantially the same reasons set forth" in the attached Magistrate Judge's Report and Recommendation the recommendation that a motion to strike the defendant's motion to dismiss should be denied because "there is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda")(unpublished); Applied Capital, Inc. v. Gibson, No. Civ. 05-98 JB/ACT, 2007 WL 5685131, *7 & *18 (D.N.M. Sep 27, 2007)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278 (10th Cir. 1992), and refusing to strike motion to dismiss because "[m]otions to strike are reserved for striking pleadings");

Coleman v. City of Pagedale, No. 4:06-CV-1376 ERW, 2008 WL 161897, *4 (E.D.Mo. Jan. 15, 2008)(holding that a sur-reply and memorandum were not pleadings and could not be attacked with a motion to strike); 2 James Moore, Milton I. Shadurupdates & Mary P. Squiers, MOORE'S FEDERAL PRACTICE § 12.37[2] (3rd ed. 2008)("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike.").

The exception to this principle is that a Court may "choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court."  Superior Prod. P'ship v. Gordon Auto Body Parts Co., No. 06-cv-916, 2008 WL 2230774, at *1 (S.D. Ohio May 28, 2008).  See In re Hopkins, No. 98-1186, 162 F.3d 1173, 1998 WL 704710, *3 n.6 (10th Cir. Oct. 5, 1998)(holding that, because party's "briefs were non-complying . . .  it was well within the discretion of the district court to strike them")(unpublished); Jones v. United Space Alliance, L.L.C., No. 05-13001, 170 Fed. Appx. 52, 57 (11th Cir. Feb. 3, 2006)(holding that court did not abuse its discretion in striking a motion that violated the district's local rules)(unpublished).

### STANDARDS FOR DECIDING A MOTION TO DISMISS

A complaint does not require "detailed factual allegations," but the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)(internal quotation marks and bracket omitted).  A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." Id. at 1974. In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp.

v. Twombly, 127 S. Ct. at 1965 (internal quotation marks omitted).

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 127 S Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247.

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [Bell Atl. Corp. v. Twombly, 127 S. Ct.] at 1965 n. 3.  *See Airborne Beepers & Video*, *Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10.  Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

Robbins v. Oklahoma, 519 F.3d at 1248.  Complaints in § 1983 actions subject to qualified-

immunity defenses

> must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made.

> * * * *

> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.  The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the

-11-

asserted claim is clearly established.

Robbins v. Oklahoma, 519 F.3d at 1249 (internal quotation marks and citations omitted).  Further,

"conclusory allegations without supporting factual averments are insufficient to state a claim on

which relief can be based," even in a complaint prepared by a pro se plaintiff.  Hall v. Bellmon, 935

F.2d 1106, 1110 (10th Cir. 1991)

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

"The Judicial power of the United States shall not be construed to extend to any suit in law

or equity, commenced or prosecuted against one of the United States by Citizens of another State,

or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend XI.  The Eleventh Amendment

bars a suit for damages in federal court against a State, its agencies, and its officers acting in their

official capacities, even when the action is brought under § 1983.  In  Will v. Michigan Dep't. of

State Police, 491 U.S. 58 (1989), the Supreme Court held that "Section 1983 provides a federal forum

to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants

who seek a remedy against a State for alleged deprivations of civil liberties."  491 U.S. at 70-71.  See

Kentucky v. Graham, 473 U.S. 159, 169 (1985); Rozek v. Topolnicki, Jr., 865 F.2d 1154, 1158 (10th

Cir. 1989)(holding that Eleventh Amendment barred suit for damages under § 1983 against the

Colorado Office of the District Attorney); Meade v. Grubbs, 841 F.2d 1512, 1525 (10th Cir.

1988)(holding that the Oklahoma Attorney General's Office was an arm of the state entitled to

Eleventh-Amendment immunity).  New Mexico has not waived its Eleventh-Amendment immunity

by enacting the New Mexico Tort Claims Act ("the NMTCA").  See N.M.S.A § 41-4-4F (providing

that the NMTCA does not waive Eleventh Amendment immunity); Mescalero Apache Tribe v. New

Mexico, 131 F.3d 1379, 1384 (10th Cir. 1977)(stating that the NMTCA does not waive Eleventh-

Amendment immunity).

## LAW REGARDING ABSOLUTE JUDICIAL IMMUNITY

It is well established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  Stump v. Sparkman, 435 U.S. 349, 355-56 (1978).  That same immunity continues even if the judge's "exercise of authority is flawed by the commission of grave procedural errors."  Id. at 359.  Both absolute judicial immunity and qualified immunity provide immunity from suit.  See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(noting that "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial")(italics in original).

As the Supreme Court of the United States explained over 130 years ago, absolute immunity is granted for judicial acts because

> it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.  Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.
>
> . . . .
>
> Controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings, are being constantly determined in those courts, in which there is great conflict in the evidence and great doubt as to the law which should govern their decision.  It is this class of cases which impose upon the judge the severest labor, and often create in his mind a painful sense of responsibility.  Yet it is precisely in this class of cases that the losing party feels most keenly the decision against him, and most readily accepts anything but the soundness of the decision in explanation of the action of the judge.  Just in proportion to the strength of his convictions of the correctness of his own view of the case is he apt to complain of the judgment against him, and from complaints of the judgment to pass to the ascription of improper motives to the judge.  When the controversy involves questions affecting large amounts of property or relates to a matter of general public concern, or touches the interests of numerous parties, the

disappointment occasioned by an adverse decision, often finds vent in imputations of this character, and from the imperfection of human nature this is hardly a subject of wonder.  If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away.  Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action.

If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and his usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him in every litigated case, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party -- and that judge perhaps one of an inferior jurisdiction -- that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party.

Bradley v. Fisher, 80 U.S. 335, 347-49 (1871).  Since issuing its opinion in Bradley v. Fisher, the Supreme Court has continued to emphasize that a judge's immunity from civil liability "is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  Mireles v. Waco, 502 U.S. 9, 11-12 (1991)(citations omitted).

The Supreme Court has also held that absolute judicial immunity was not affected or abolished "by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights."  Pierson v. Ray,  386 U.S. 547, 554 (1967), *overruled in part on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800 (1982).  To determine whether a judge is entitled to absolute judicial immunity, courts consider whether the act itself is a function normally performed by a judge and whether the judge acted in his judicial capacity.  See  Stump v. Sparkman, 435 U.S. at 362.

-14-

## LAW REGARDING PROSECUTORIAL IMMUNITY

In determining whether Ferrera, the counsel for the Disciplinary Board of the New Mexico Supreme Court, is entitled to absolute or qualified immunity from suit, the United States Court of Appeals for the Tenth Circuit has noted that,

> [i]n addition to investigating and prosecuting disciplinary actions, counsel for the Board perform administrative functions.  The New Mexico Supreme Court has charged disciplinary counsel with "maintain[ing] permanent records of all matters processed and the disposition thereof, and [acting] as the general administrative officer for the Disciplinary Board under its direction and supervision."  Rule 17-105(C)(3).  Vesting this mix of functions in one person can obscure the line between acts taken by the Chief Disciplinary Counsel as a prosecutor and acts taken by the Chief Disciplinary Counsel as an administrator.  But prosecutorial immunity applies only to actions taken by a prosecutor in the role of advocate.  *See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 126 . . .  (1997).

Stein v. Disciplinary Bd., 520 F.3d 1183, 1190 (10th Cir. 2008).  It appears that a prosecutor who is sued because the plaintiff claims he or she violated his constitutional rights while conducting an investigation may assert only qualified immunity.  See id. at 1193 (citing Burns v. Reed, 500 U.S. 478, 495 (1991)("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.")).  In Imbler v. Pachtman, 424 U.S. 409 (1976), however, the Supreme Court ruled that a prosecutor is entitled to absolutely immunity from suit brought under § 1983 for damages based on his "initiating a prosecution and . . . presenting the State's case."  424 U.S. at 431.  Thus, "there is no question in [the Tenth Circuit] that prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution."  Scott v. Hern, 216 F.3d 897, 909 (10th Cir. 2000)(internal quotation marks omitted).

## LAW REGARDING QUASI-JUDICIAL IMMUNITY

The Supreme Court has held that, if claims against hearing officers presiding over an adjudication arise out of their adjudicatory acts, they are entitled to absolute quasi-judicial immunity. In Butz v. Economou, 438 U.S. 478 (1978), the Supreme Court held that agency hearing examiners were entitled to absolute quasi-judicial immunity because their role was "functionally comparable" to that of judge. 438 U.S. at 512-14. In Hennelly v. Flor de Maria Oliva, No. 06-2265, 237 Fed. Appx. 318 (10th Cir. May 20, 2007), the Tenth Circuit affirmed the district court's dismissal of § 1983 claims against both the New Mexico State Court Judge presiding over a child-custody case and the Hearing Officer who issued recommended rulings in that case after holding a hearing. See id. at 320. The Court held that the judge and hearing officer both "were entitled to absolute judicial immunity, as [the plaintiff's] allegations concerned actions [the] Judge [] and Officer [] took in their judicial capacities within the jurisdiction of the state court." 237 Fed. Appx. at 320.

## LAW REGARDING CONSPIRACY

"When a plaintiff seeks to prove state action based on a conspiracy theory, a requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal." Fernandez v. Mora-San Miguel Elec. Co-op., Inc., 462 F.3d 1244, 1252 (10th Cir. 2006)(internal quotation marks omitted). The plaintiff must demonstrate "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." Id. (internal quotation marks omitted). "Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." Dennis v. Sparks, 449 U.S. 24, 28 (1980). Further, "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989)(defining a "conclusory allegation" of conspiracy as one that fails "to allege specific facts

-16-

showing agreement and concerted action among defendants").  "[M]ere conclusory allegations with

no supporting factual averments are insufficient; the pleadings must specifically present facts tending

to show agreement and concerted action." Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th

Cir. 1983).  The standard is even stricter where the state officials allegedly involved in the conspiracy

are immune from suit, as are [] state court judges []."  Id. (holding that, to allege only that judges

were "aware of and involved in the conspiracy," is insufficient to state a claim for conspiracy to

violate civil rights under §§ 1983 & 1985).

## LAW REGARDING DISMISSAL UNDER RULE 4(m)

Rule 4(m) of the Federal Rules of Civil Procedure provides, in part:

> If a defendant is not served within 120 days after the complaint is filed, the court --
> on motion or on its own after notice to the plaintiff -- must dismiss the action without
> prejudice against that defendant or order that service be made within a specified time.
> But if the plaintiff shows good cause for the failure, the court must extend the time
> for service for an appropriate period.

FED. R. CIV. P. 4(m).  In applying this rule, the Court employs a two-step analysis.  See Espinoza v.

United States, 52 F.3d 838, 841 (10th Cir. 1995).  First, a court must preliminarily examine whether

the plaintiff can demonstrate good cause for failing to timely effect service by "follow[ing] the cases

in this circuit that have guided that inquiry."  Id.  If the plaintiff shows good cause, the Court must

grant an extension of time in which to properly serve the defendant.  See id.  If the plaintiff fails to

show good cause, however, the court may exercise its discretion to either dismiss the case without

prejudice or to extend the time for service.   See id.  "The good cause provision of Rule 4[(m)][1]

should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to

comply with the Rule."  Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir.

---

[1]  FED. R. CIV. P.  4(j) (1987) was amended in 1993 and is now codified as FED. R. CIV.
P.  4(m).

1994)(internal quotation marks omitted)(holding that, where plaintiffs failed to serve the proper parties, good cause was not shown even though the statute of limitations had run, the plaintiffs' counsel had misinterpreted the applicable rule of procedure, the defendants failed to show that they would be prejudiced by an extension, and the defendants may have had actual notice of the lawsuit). See Jones v. Frank, 973 F.2d 872, 873-74 (10th Cir. 1992)(holding that good cause was not shown where pro se plaintiff attempted service on the proper government parties via regular mail rather than by certified or registered mail, and where the plaintiff had been notified by the United States Attorney that his attempted service failed to comply with the rules, and stating that it could not "sanction Plaintiff's complete failure to correct his service defects after being told what was wrong"). "[I]nadvertence or negligence alone do not constitute 'good cause' for failure of timely service. Mistake of counsel or ignorance of the rules also usually do not suffice." Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 176 (10th Cir. 1996)(holding that "[p]ro se litigants must follow the requirements of Rule 4[m]"). If a plaintiff does not show good cause, a court may consider several factors in determining whether to grant a permissive extension, including whether the applicable statute of limitations would bar the re-filed action, whether the plaintiff is proceeding pro se, and whether the defendants are evading service. See Espinoza v. United States, 52 F.3d at 842.

## LAW REGARDING DUPLICATIVE LITIGATION

"[T]he question whether a litigant should be able to litigate the same issue at the same time in more than one federal court is an easy one -- he should not be." Crowley Cutlery Co. v. United States, 849 F.2d 273, 279 (7th Cir. 1988). Litigating the same issue in two federal cases "is a waste of federal judicial resources." Id. See Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976)("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."). This hoary principle applies when a litigant

files two complaints against the same defendants involving the same issues in the same district court.

> The economic waste involved in duplicating litigation is obvious.  Equally important is its adverse effect upon the prompt and efficient administration of justice.  In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy.  Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issue and the same parties.

Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 930 (3d Cir. 1941).

## ANALYSIS

The Court will not strike the motion to dismiss, but will resolve the motion on the merits.  The state entities and their employees acting in their official capacities are immune from suit under the Eleventh Amendment.  Moreover, the judges, hearing officer, and the counsel for the Disciplinary Board enjoy absolute immunity.

## I.    THE COURT WILL NOT STRIKE THE MOTION TO DISMISS.

Ysais contends that the Court must strike the State Defendants' motion to dismiss because it is, in his opinion, "frivolous and baseless" because "they all ready [sic] agreed there [sic] clients do not have any type of immunity" by "fail[ing] to deny document 149." Doc. 170 at 1.  Document 149 is Ysais' motion entitled "Motion for Judgment on Immunity If It Can Be Uses [sic] As Defenses When In Fact It is Void and If Citizens Have Equal Protection Under the Law," and was filed on November 21, 2008.  In fact, the State Defendants filed an untimely response to Document 149 the same day that Ysais filed his motion to strike.  See Defendants' Response to Plaintiff's Motion for Judgment on Immunity, filed January 5, 2009 (Doc. 175).  Defendants admit that the response to Ysais' motion for judgment on immunity was untimely, but contend that Ysais was not prejudiced by the untimely filing and explain that their inadvertence was caused, in part, by Ysais' confusing

-19-

flurry of withdrawing documents and filing motions around the same time.  See Defendant's Response to Plaintiff's Motion for Entry of Order of Default on Document 149 at 4, filed January 19, 2009 (Doc. 193).  The record shows that Ysais withdrew two documents and filed three motions between November 20 and 21, and that the Defendants had moved on November 21 for an extension of time in which to respond to several other motions that Ysais had filed.

The Court concludes that Ysais has presented no good reason to strike the State Defendants' motion to dismiss.  It complies with the local rules, and it is not a "pleading" subject to a motion to strike made pursuant to FED. R. CIV. P. 12(f).  See Searcy v. Soc. Sec. Admin., 1992 WL 43490, *1, *4.  If Ysais' arguments made in his Motion for Judgment on Immunity are different from his arguments made in response to the State Defendants' motion to dismiss, the Court will consider all of his arguments when resolving the State Defendants' motion to dismiss.

## II.     THE STATE ENTITIES AND THEIR EMPLOYEES ACTING IN THEIR OFFICIAL CAPACITIES ARE IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.

As the Court previously noted in Ysais' first case, state district courts are divisions of the judicial branch of the State, see Ysais v. Richardson, No. Civ 07-0287 JB/RLP, 2008 WL 4861697, at *5 (D.N.M July 9, 2008); N.M. Const. Article VI, and, therefore, the Eleventh Amendment bars any claims for damages brought in federal court against the state courts.  See Will v. Michigan Dep't. of State Police, 491 U.S. at 70-71.  Similarly, the Disciplinary Board of the Supreme Court of New Mexico is an agency of the New Mexico Supreme Court, and, accordingly, the Tenth Circuit has affirmed dismissal of claims for damages against the "Disciplinary Board and the individual State Defendants in their official capacity" as barred by Eleventh-Amendment immunity.   Guttman v. Widman, No. 05-2269, 188 Fed. Appx. 691, *696, 2006 WL 1755951, **2 (10th Cir. June 28, 2006). The Judicial Standards Commission is a constitutionally created state entity charged with overseeing

the discipline or removal of state judges.  See N. M. Const. Art. VI, § 32.  Thus, it, too, is an arm of

the state, and it and its Commissioners acting in their official capacities are protected from a suit for

damages by Eleventh-Amendment immunity.

A review of the Second Amended Complaint demonstrates that Ysais' complaints against the

Commission's employees and Commissioners all arise out of actions performed in their official

capacities.  They decided, in their discretion, not to pursue disciplinary action against Judge Walker

while acting as Commissioners.  The Court, therefore, concludes that it should dismiss all of Ysais'

claims against the State of New Mexico, the Judicial Standards Commission and its employees and/or

Commissioners Noel, Smoak, and Roybal, the Disciplinary Board, the Second Judicial District Court,

the Thirteenth Judicial District Court, and the New Mexico Court of Appeals for lack of subject-

matter jurisdiction as barred by the Eleventh Amendment.  See Will v. Michigan Dep't. of State

Police, 491 U.S. at 70-71;  Harris v. Owens, 264 F.3d at 1288.

The Court rejects Ysais' arguments that: (i) the Supreme Court cases explaining Eleventh-

Amendment immunity are void and immunity does not exist; (ii) the need for a waiver of sovereign

immunity to sue the state is also void; (iii) judicial immunity is not valid because it is a judge-created

principle; (iv) all forms of immunity are invalid because they violate the Equal Protection Clause of

the Fourteenth Amendment; and (v) he was not required under rule 8 of the Federal Rules of Civil

Procedure to set out more facts upon which he bases his claims than he did.   As the Court has

explained to Ysais at the hearings and in prior opinions, this Court -- as an inferior court -- is not  free

to disregard the holdings of the Supreme Court and of the Tenth Circuit.  Ysais has not, with his

allegations, pled or attempted to plead around Eleventh Amendment immunity, or attempted to come

within any exceptions to its jurisdictional bar.

### III.   THE JUDGES AND THE HEARING OFFICER ARE ABSOLUTELY IMMUNE FROM SUIT.

Ysais' Second Amended Complaint alleges that Judge Walker engaged in the following acts: she proceeded with hearings, threatened Ysais in open court in some unspecified way, stated her opinion on the record and in open court that, "[j]ust because the State could not prove their case doesn't mean that you did not commit the acts," reopened the custody case, set custody hearings, and ordered a TRO, refused to recuse herself, ignored or denied his requests for a change of venue his notice of removal, failed to "follow and live by her oath of office to up hold and defend the Constitution against all enemies foreign and domestic," and failed to follow the Code of Judicial Conduct.  He claims that Judges Alarid, Fry, and Castillo prevented his appeal from moving beyond the docketing statement, refused to allow him to file a brief, and "refused to send this case to the next level."  On its face, his Second Amended Complaint establishes that all of the actions of which Ysais complains by Judge Walker, Judge Alarid, Judge Fry, and Judge Castillo were "function[s] normally performed by a judge," and that these judicial acts were taken in cases in which the courts had jurisdiction.  See Stump v. Sparkman, 435 U.S. at 362; Mireles v. Waco, 502 U.S. at 11-12.  Judges Walker, Alarid, Fry, and Castillo therefore are absolutely immune from suit, and the Court will dismiss all of Ysais' claims against them.

A careful review of the Second Amended Complaint shows that Ysais has not made any factual allegation regarding Judge Lang.  Instead, he summarily legally concludes in three places that Judge Lang violated his constitutional right to due process.  He has not stated, therefore, a cognizable claim against Judge Lang.  See Robbins v. Oklahoma, 519 F.3d at 1249 (holding that a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights"); Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir.

2007)(affirming dismissal of complaint against specific defendants because the plaintiff "fail[ed] to include any allegations regarding any acts by the . . . defendants"); Hall v. Bellmon, 935 F.2d at 1110 (noting that "conclusory allegations without supporting factual averments are insufficient to state a claim").

Similarly, Colella was acting as a hearing officer for the Thirteenth Judicial District Court and had jurisdiction over Ysais' custody proceedings because Ysais' attempt at removal was void. The act of which Ysais complains -- Colella presided over a hearing -- is a judicial act. Colella thus has absolute quasi-judicial immunity from suit. See Hennelly v. Flor de Maria Oliva, 237 Fed. Appx. at 320.

## IV.   FERRERA IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY.

Ysais' only factual allegation against Ferrera, counsel for the Disciplinary Board, is that she did not conduct "any investigation into [his] allegation of [attorney] misconduct." Second Amended Complaint at ¶ 41.   He does not allege that she violated his constitutional rights while conducting an investigation. See Stein v. Disciplinary Board, 520 F.3d at 1193 (citing Burns v. Reed, 500 U.S. at 495).  Because the decision whether to investigate and prosecute is a prosecutorial act protected by absolute prosecutorial immunity, all claims against Ferrera based on this allegation must be dismissed.  See Scott v. Hern, 216 F.3d at 909 ("[T]here is no question in [the Tenth Circuit] that prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution.")(internal quotation marks omitted).

## V.   THE COURT WILL DISMISS THE CLAIMS AGAINST RICHARDSON FOR FAILURE TO TIMELY SERVE THE COMPLAINT.

Ysais filed his Second Amended Complaint on June 4, 2008.  See Doc. 3.  On June 24, 2008,

the Court issued a Summons for Richardson, listing as his address for service of process as 490 Old Santa Fe Trail, Room 400, Santa Fe, NM 87501.  See Doc. 29, at 1.  Rule 4(e) of the Federal Rules of Civil Procedure requires plaintiffs to serve a copy of the summons and complaint to an individual within the Court's federal judicial district either in the manner prescribed by that State's law, or by delivering a copy of the summons and complaint to the defendant personally, by leaving copies at the individual's dwelling, or by delivering copies to the individual's authorized agent.

Ysais' process server attempted to serve Richardson on June 25, 2008, by leaving the summons and a copy of the Complaint at the Attorney General's Office in Albuquerque, New Mexico.  See id. at 2.  The receptionist at the Attorney General's Office informed the process server that "service is only executed at the Santa Fe office," but the process server indicated on the Summons:  "Per Rule 45[2], service is executed properly," and Ysais filed it as executed.  Id.  The Attorney General's Office previously had refused to accept service of process for Richardson on June 20, again specifically informing the process server that service of process must be conducted in Santa Fe, and when the process-server placed the summons on an employee's desk at the Attorney General's office, the employee refused service, stating that he was "going to throw it in the trash."  Doc. 24 at 2.  On July 9, 2008, counsel for Richardson entered a "special appearance on behalf of Governor Bill Richardson," again notifying Ysais that he had not properly served Richardson and that Richardson would not answer the Complaint until proper service was effected.  Doc. 39, at 1.

Richardson asserts that, "[a]s of November 25, 2008, Plaintiff has *not* served Governor Bill Richardson with the Summons or the Complaint filed in this matter."  Doc. 152 at 3 (italics in original).  Ysais argues that service of the Complaint was proper under rule 1-004 of the New Mexico

---

[2]  Rule 45 of the Federal Rules of Civil Procedure relates to the service of subpoenas and not to service of process.

Rules of Civil Procedure, and that it occurred on June 25, 2008.

> The relevant subsection of rule 1-004 provides:
>
> service of process on the governor, attorney general, agency, bureau, department, commission or institution may be made either by serving a copy of the process to the governor, attorney general, or the chief operating officer of the entity listed in this subparagraph or to the receptionist of the state officer.  A cabinet secretary, a department, bureau, agency or commission director or an executive secretary shall be considered as the chief operating officer.

Rule 1-004(H)(1)(e) NMRA. Ysais contends that the rule means that a person has the "option" to choose to serve the governor by serving the attorney general.  See Doc. 164 at 4.  Ysais misinterprets the rule.  Under Ysais' interpretation, he could also serve the governor by serving the executive secretary for the Board of Accounting, but that is not the most reasonable interpretation of the rule. To serve the attorney general, Ysais must serve the attorney general or his chief operating officer, not the governor's secretary, for example.  Rule 1-004(H)(1)(e) provides for service on the governor by personally serving a copy of the summons and complaint either to him or to his receptionist, thereby making it consistent with the New Mexico statute related to service of process, which provides: "Service of process on the governor, attorney general, agency, bureau, department, commission or institution or head thereof shall be made either by handing a copy of the summons and complaint to the head or to his receptionist.  Where an executive secretary is employed, he shall be considered as the head."  N.M.S.A. § 38-1-17H.  See Trujillo v. Goodwin, 138 N.M. 48, 50, 116 P.3d 839, 840-41 (N.M. Ct. App. 2005)(holding that, because § 38-1-17H requires personal service by "handing" the summons and complaint to the officer, mailing or faxing them is not sufficient).  Ysais may be confusing his obligations under rule 1-004(h)(1)(e) and N.M.S.A. § 38-1-17H, with his obligations under rule 1-004(h)(1)(c).  When suing an officer or employee of the state, like the governor, a plaintiff who names the governor as a defendant must deliver "a copy of the process to

the officer, official or employee and to the attorney general."  Rule 1-004(h)(1)(c).  While requiring

Ysais to also serve the Attorney General, rule 1-004(h)(1)(c) does not relieve Ysais of serving the

governor.

Ysais did not timely serve Richardson within "120 days after the complaint is filed."  FED.

R. CIV. P. 4(m).  He also has not shown good cause for his failure.  The office of the Attorney

General twice informed him that his attempt was ineffective, Richardson notified him of improper

service before 120 days had passed, and Richardson's address for service of process is on the face

of the Summons.  See Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d at 1438 (holding that

failure to properly interpret the rules is not good cause for failing to timely serve under rule 4(m)).

Although the Court has discretion to allow Ysais an extension of time in which to serve

Richardson, see Espinoza v. United States, 52 F.3d at 841, the Court will not exercise that discretion.

Ysais' Complaint against Richardson is largely duplicative of his first Complaint, filed March 23,

2007 in case number 07-0287 JB/RLP.  In both cases, Ysais sued Richardson under 42 U.S.C. §§

1983 and 1985 for alleged violation of his constitutional right to due process and for alleged

conspiracy arising out of Ysais' state divorce and child-custody cases.  In both cases, Ysais alleged,

in a conclusory fashion, that Richardson, as Governor, violated Ysais' civil rights by "interfering"

in some unspecified way.  See Ysais v. Richardson, No. 07-0287 JB/RLP, Doc. 1, ¶ 126, at 17; Ysais

v. State of New Mexico, No. 08-0449 JB/DJS, Doc. 3, ¶ 43, at 8.  Ysais had no right to bring a second

suit against Richardson in this court "involving the same issue and the same parties."  Crosley Corp.

v. Hazeltine Corp., 122 F.2d at 930.

Further, Ysais' Second Amended Complaint does not allege enough facts regarding

Richardson to "plausibly (not just speculatively) [state] a claim for relief" against him.  Robbins v.

Oklahoma, 519 F.3d at 1247.  None of the allegations indicate that Richardson was personally

involved in Ysais' divorce and custody cases, and the Court previously has held that Richardson is immune from suit in federal court for actions he took -- or did not take -- in his official capacity as governor.  Ysais v. Richardson, No. Civ. 07-0287 JB/RLP, Memorandum Opinion and Order at 2, filed July 9, 2008 (Doc. 356).  The Court will not grant an extension of time in which to serve Richardson.

**IT IS ORDERED** that Ysais's Motion to Strike (Doc. 174) is denied; that the State Defendants' Motion to Dismiss (Doc. 167) is granted, and that Richardson's Motion to Dismiss (Doc. 152) is granted, and this Complaint is dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Christopher Ysais
Rio Rancho, New Mexico

 *Pro Se Plaintiff*

Erika E. Anderson
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendants State of New Mexico, Judicial Standard Commission,*
 *James A. Noel, Executive Director of Judicial Standard Commission, David S.*
 *Smoak, Chairman of the Judicial Standard Commission, Randall D. Roybal,*
 *Deputy Director/Chief of Staff Attorney of the Judicial Standard Commission,*
 *Governor Bill Richardson, The Disciplinary Board, Virginia L. Ferrara, Chief*
 *Disciplinary Counsel of the Disciplinary Board, Second Judicial District Court,*
 *Judge Deborah Davis Walker, Judge William F. Lang, Thirteenth Judicial*
 *District Court, Nancy Colella, Hearing Officer Thirteenth Judicial District*
 *Court, State of New Mexico Court of Appeals, Judge A. Joseph Alarid, Judge*
 *Cynthia A. Fry, and Judge Celia Foy Castillo*